UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| ANGELA HAMILTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:18-CV-367 NAB |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Angela Hamilton's appeal regarding the denial of disability insurance benefits and supplemental security income under the Social Security Act. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties have consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Doc. 9.] The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will reverse and remand the Commissioner's decision.

### **Issue for Review**

Hamilton presents one issue for review. She asserts that the ALJ failed to properly evaluate her treating physicians' medical opinions and the agency psychologist's opinion. The Commissioner contends that the ALJ's decision is supported by substantial evidence in the record as a whole and should be affirmed.

**Standard of Review**

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A).

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court reviews the decision of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). The Court determines whether evidence is substantial by considering evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006). The Court may not reverse just because substantial evidence exists that would support a contrary outcome or because the Court would have decided the case differently. *Id.* If, after reviewing the record as a whole, the Court finds it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's finding, the Commissioner's decision must be affirmed. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). The Court must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 729 (8th Cir. 2003).

**DISCUSSION**

Hamilton contends that the ALJ improperly weighed the medical opinions in this case. There were four medical opinions in the record authored by Hamilton's treating psychiatrists Dr.

Julio Bernardi and Dr. Michael Wenzinger, state agency psychologist Dr. Raphael Smith, and consultative examiner Dr. Amy J. Marty, a psychologist. Hamilton asserts that the ALJ failed to properly evaluate the opinion evidence provided by Dr. Bernardi, Dr. Wenzinger, and Dr. Smith.

**Hamilton's Medical Record**

The medical record in this case is small. The first treatment record concerns Hamilton's hospital admission from February 25, 2014 to March 3, 2014. (Tr. 309-20.) At the time of her admission, Hamilton was disheveled and unkempt with increased psychomotor activity. (Tr. 319.) She was experiencing auditory hallucinations, as well as persecutory, somatic, religious, and bizarre delusions. (Tr. 319.) Her flow of thought was described as disorganized and illogical with derailment. (Tr. 319.) At discharge, the number of auditory hallucinations had decreased, but she still reported grandiose delusions of being married to a prominent religious figure. (Tr. 311.) Her discharge diagnosis was psychosis and she was started on Risperidone. (Tr. 312.)

Hamilton was treated by Dr. Julio Bernardi between July 2014 and June 2015. There are four visits with Dr. Bernardi in the record between July 2014 and June 2015. (Tr. 253-57, 277-78, 283-84.) Dr. Bernardi diagnosed Hamilton with schizophrenia. Hamilton's mental status examinations were within normal limits and her symptoms were noted as stable or in remission. (Tr. 253-54, 283-84.) During the last visit in the record, Hamilton reported that she had not had psychotic symptoms in over a year. (Tr. 277.) Hamilton also noted, however, that since her mother's death seven months before, she experienced low mood, poor energy, some anhedonia, social isolation, frequent crying, and decreased concentration. (Tr. 277.)

On August 14, 2015, Dr. Andrea Giedinghagen, psychiatrist, conducted an annual clinic psychiatric intake assessment. (Tr. 273-76.) During the assessment, Hamilton reported that she had not had any psychotic symptoms, persecutory or grandiose delusions, or auditory

hallucinations for several months. (Tr. 274.) She also responded that she was experiencing bouts of low mood, low energy, crying spells, and decrease in self-care. (Tr. 274.) Although her mood was described as anxious, the mental status examination was within normal limits. (Tr. 275.) Hamilton testified that she received treatment from Dr. Giedinghagen for a year. (Tr. 49.)

Dr. Michael Wenzinger began treating Hamilton in July 2016, but there are no medical records from Dr. Wenzinger, except Hamilton's annual psychiatric clinic intake assessment on July 28, 2016. (Tr. 296-300.) At the assessment, Hamilton reported that she continued to experience episodes of low mood despite initiation of Zoloft medication, onsets of low energy, crying spells, decreased levels of self-care, decreased mood, and anhedonia. (Tr. 297.) She also reported that the Zoloft decreased the number of days that she experienced these symptoms. Hamilton's mental status examination was normal. (Tr. 298-99.) Dr. Wenzinger opined that there was "notably and confoundingly a history of depressive symptoms that do not appear to quite meet full criteria for a major depressive episode." (Tr. 299.) He opined that the symptoms may be negative symptoms from her schizophrenia or major depressive disorder with psychotic symptoms. (Tr. 299.)

**Evaluation of Medical Opinion Evidence**

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite her impairments and her physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)[1]. All medical opinions, whether by treating or consultative examiners are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source;

---

[1] Many Social Security regulations were amended effective March 27, 2017. Per 20 C.F.R. § 404.1527, the court will use the regulations in effect at the time that this claim was filed.

4

(3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

**Consultative State Examiner Dr. Raphael Smith**

The ALJ gave great weight to the opinion of the state agency consultant Dr. Raphael Smith. Dr. Smith, a state agency psychologist, examined Hamilton's medical records and prepared a residual functional capacity ("RFC") assessment to the SSA on October 30, 2014. (Tr. 65-73.) Dr. Smith diagnosed Hamilton with schizophrenic, paranoid, or other psychotic disorders. (Tr. 68.) Dr. Smith opined that Hamilton was moderately limited in the ability to understand, remember, and carry out detailed instructions and the ability to maintain attention and concentration for extended periods. (Tr. 70.) Dr. Smith opined that while Hamilton may have difficulty sustaining attention and concentration for extended periods, or with remembering and carrying out more detailed instructions, she remained able to carry out simple work instructions having adequate concentration, persistence, and pace for less demanding work. (Tr. 71.) Smith's RFC assessment was written before the treating physicians' medical opinions were written.

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence," except for the determination of disability. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). "Administrative

5

law judges are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). Their opinions are evaluated under the standards outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c).

"The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as whole." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010). "The regulations also provide that when evaluating a nonexamining source's opinion, the ALJ evaluates the degree to which these opinions consider all of the pertinent evidence in the claim including opinions of treating and other examining sources." *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). "[The] opinion of a nonexamining consulting physician is afforded less weight if the consulting physician did not have access to relevant medical records made after the date of evaluation." *McCoy v. Astrue*, 648 F.3d 605, 616 (8th Cir. 2011).

The Court finds that the ALJ should not have given great weight to Dr. Smith's opinion. First, the state agency consultant did not treat or examine Hamilton. Second, the state agency psychologist reviewed Hamilton's medical records before any of the medical opinions from the treating psychiatrists were in the record. Therefore, the state agency psychologist's RFC assessment was based on an incomplete record. Third, the state agency consultant's opinion is contradicted by the medical opinions of her treating psychiatrists who examined and treated Hamilton and found she had greater restrictions. Finally, Hamilton's treatment records demonstrate that she has a chronic mental disability. *See* 20 C.F.R. Part 401, Subpt. P, App. 1, 12.00(F) (in cases involving chronic mental disorder, overt symptomatology may be controlled or attenuated by psychosocial factors such as highly structured and supportive settings that may

greatly reduce the mental demands on the claimant. With lowered mental demands, overt symptoms and signs of the underlying mental disorder may be minimized, but the ability to function outside of a structured or supportive setting may not have changed). Just as a person with physical impairments need not be bedridden or completely helpless to be found disabled, a person with mental impairments does not have to be hospitalized or suicidal every day to be found disabled. *See Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (well settled law that a claimant need not be bedridden or helpless to be found disabled). For these reasons, the Court finds that the ALJ erred in granting great weight to Dr. Smith's opinion.

**Treating Psychiatrists' Opinions**

Next, Hamilton asserts that the ALJ improperly weighed the medical opinion evidence given by her treating psychiatrists Drs. Bernardi and Wenzinger. Generally, a treating physician's opinion is given controlling weight, but is not inherently entitled to it. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). A treating physician's opinion will be given controlling weight if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Hacker*, 459 F.3d at 937. "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir. 2000).

"Good reasons for assigning lesser weight to the opinion of a treating source exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments

7

are supported by better or more thorough evidence." *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (internal citations omitted). The court reviews "the record to ensure that an ALJ does not disregard evidence or ignore potential limitations, but [it is not required for] an ALJ to mechanically list and reject every possible limitation." *McCoy v. Astrue*, 648 F.3d at 615.

**Dr. Julio Bernardi**

On June 19, 2015, Dr. Bernardi completed an assessment for social security disability claim for Hamilton. (Tr. 262-63.) Dr. Bernardi noted that Hamilton's psychiatric history contained episodes of auditory hallucinations, delusions, social isolation, and poor self-care. (Tr. 262.) Dr. Bernardi noted that Hamilton was currently free of hallucinations or delusions for several months with social isolation, abulia, poor motivation, and cognitive problems. (Tr. 262.) Dr. Bernardi wrote that the medication, Risperidone was effective for hallucinations, but not for social and cognitive deficits. (Tr. 262.) He wrote that her mental impairments were "impairing to an extreme extent. Patient spends majority of her time inside her room without [indecipherable] w/others, due to residual schizophrenia symptoms. This has been going on for several years." (Tr. 262.)

Dr. Bernardi found that Hamilton had marked limitations in the ability to maintain a work schedule and be consistently punctual; maintain adequate attention, concentration, and focus on work duties through a complete work day; make simple work related decisions, complete a normal work week without interruptions from psychologically based symptoms; and work in coordination, or in close proximity to others. (Tr. 263.) He also opined that she had marked limitations in the ability to accept instructions and respond appropriately to criticism from supervisors; respond appropriately to work related stressors; maintain acceptable personal appearance and hygiene; demonstrate reliability in a work setting; and sustain extended periods of employment (greater than

8

6 months) without decompensation from periodic exacerbation of psychiatric symptoms. (Tr. 263.) Dr. Bernardi diagnosed Hamilton with schizophrenia. (Tr. 262.)

The ALJ gave Dr. Bernardi's opinion little weight, because she stated that the marked limitations contained in his opinion were not supported by evidence and inconsistent with his treatment notes and the record as a whole. (Tr. 23.) The Court disagrees. Dr. Bernardi's opinion was consistent with Hamilton's testimony and his treatment notes. At the administrative hearing, Hamilton stated that she feels "low" and "depressed." (Tr. 44.) She testified that she had crying spells and no energy. (Tr. 44.) Hamilton reported that she occasionally gets out of the house and does not go out alone. (Tr. 44.) She also reported that her sleep was sporadic, and she no longer is able to sew and has problems understanding things she reads. (Tr. 46.) She testified that her medication for depression was increased, because it was taking her a long time to come out of depressive episodes. (Tr. 46.) She testified that the depression was still there but had improved with the medication. (Tr. 47.) Finally, she testified about memory problems. (Tr. 48.) Dr. Bernardi's treatment notes and other portions of the record included reports of these same symptoms: crying spells (Tr. 274, 277, 297), not engaged in recreational activities (Tr. 283, 286), stays in house (Tr. 274, 283, 286, 291), low mood (Tr. 274, 277, 297), poor energy (Tr. 274, 277, 297), partial response to medication (Tr. 297), and decreased levels of self-care (Tr. 274, 297).

Further, Dr. Bernardi's treatment notes were not assessing Hamilton's ability to work but focusing on treatment for her schizophrenia. While Dr. Bernardi's treatment notes indicate that Hamilton's psychosis (consisting of auditory hallucinations and delusions) is stable and she has not had any psychotic symptoms, he indicated that her medication, Risperidone was "effective for hallucinations but not for social and cognitive deficits." (Tr. 262.) She was then given depressive medication by Dr. Wenzinger, which was partially effective. Based on the foregoing, the Court

9

finds that the ALJ's assessment of little weight to Dr. Bernardi's opinion is not supported by substantial evidence.

### Dr. Michael Wenzinger

Dr. Wenzinger prepared an assessment for social security disability claim regarding Hamilton on October 12, 2016. Dr. Wenzinger wrote that Hamilton had a history of multiple episodes of psychosis (auditory hallucinations and persecutory delusions) as well as depressive episodes. (Tr. 301.) He diagnosed her with schizophrenia, baseline and chronic negative symptoms of energy, and periodic symptoms of auditory hallucinations and delusions. (Tr. 301.) Dr. Wenzinger opined that full time employment was significantly limited due to psychotic episodes, as well as constant negative symptoms of present low energy, and poor motivation due to schizophrenia. (Tr. 302.)

Dr. Wenzinger opined that Hamilton had marked limitations in the ability to complete a normal workweek without interruptions from psychologically based symptoms and sustain extended periods of employment (greater than 6 months) without decompensation from periodic exacerbations of psychiatric symptoms. (Tr. 302.) He opined that Hamilton was moderately limited in the ability to maintain a work schedule and consistently be punctual; understand, remember, and carry out detailed (3 or more steps), instructions and procedures; maintain concentration and focus on work duties through a complete work day; make appropriate work related decisions; respond appropriately to routine changes in the work setting; respond appropriately to routine work related stressors; and demonstrate reliability in a work setting. (Tr. 302.)

The ALJ gave Dr. Wenzinger's opinion little weight, because she stated that Dr. Wenzinger had a short treating relationship with Hamilton and his notes did not support a finding that

Hamilton was precluded from all full time employment. (Tr. 23.) The ALJ also stated that Dr. Wenzinger's opinion was internally inconsistent. (Tr. 23.)

Again, the Court finds that the ALJ erred in assigning little weight to Dr. Wenzinger's opinion. The Court acknowledges that Dr. Wenzinger's treating relationship was only a few months at the time that he wrote the medical opinion. The Court also notes, however, that Dr. Wenzinger, unlike Dr. Smith, reviewed the most complete medical record and actually treated Hamilton. Dr. Wenzinger is a psychiatrist. Although, Dr. Wenzinger found less marked limitations in his assessment of Hamilton than Dr. Bernardi, Hamilton's symptoms had decreased, and she had started anti-depressant medication at the time he treated her. Next, the ALJ alleges that Dr. Wenzinger's opinion was internally inconsistent, because he stated she could not work and found that she was only mildly limited in some areas. There is no requirement that a claimant have marked limitations in every area of work performance to be found disabled. Also, it "is possible for a person's health to improve, and for the person to remain too disabled to work." *Cox v. Barnhart*, 345 F.3d 606, 609 (8th Cir. 2003). "[D]oing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity." *Hutshell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). *See e.g., Gude v. Sullivan*, 956 F.2d 791, 794 (8th Cir. 1992) (claimant doing well for someone with systemic lupus erythematosus and it does not contradict doctor's opinion on her inability to work); *Fleshman v. Sullivan*, 933 F.2d 674, 676 (8th Cir. 1991) (A person who has undergone a kidney transplant may indeed "feel better" than she did when she was undergoing dialysis, but that does not compel the conclusion that she was therefore able to work). To determine whether a claimant has the residual functional capacity necessary to be able to work the Court looks to whether she has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful

conditions in which real people work in the real world." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004) (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)). Hamilton's experiences of stable and less stable periods are consistent with chronic mental disability. Based on the foregoing, the Court finds that the ALJ's assignment of little weight to Dr. Wenzinger's opinion is not supported by substantial evidence in the record as a whole.

## CONCLUSION

Based on the foregoing, the Court finds that the Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court is aware that upon remand, the ALJ's decision as to non-disability may not change after addressing the deficiencies noted herein, but the determination is one the Commissioner must make in the first instance. *See Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (when a claimant appeals from the Commissioner's denial of benefits and the denial is improper, out of an abundant deference to the ALJ, the Court remands the case for further administrative proceedings); *Leeper v. Colvin*, No. 4:13-CV-367 ACL, 2014 WL 4713280 at *11 (E.D. Mo. Sept. 22, 2014) (ALJ duty to make disability determination). Because Hamilton first applied for benefits in 2014, and it is now 2019, the Commissioner is urged to begin proceedings without delay and resolve this case as soon as possible.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Hamilton seeks in her Complaint and Brief in Support of Plaintiff's Complaint is **GRANTED in part and DENIED in part**. [Docs. 1, 15.]

**IT IS FURTHER ORDERED** that the ALJ's decision of February 28, 2017 is **REVERSED** and **REMANDED**.

**IT IS FURTHER ORDERED** that upon remand, the Commissioner should re-weigh the opinions of Hamilton's treating psychiatrists and the state agency psychologist in accordance with this opinion. Then, the Commissioner must develop a new RFC determination regarding Hamilton's mental health impairments.

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will be filed contemporaneously with this Memorandum and Order remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4

Dated this 21st day of March, 2019.

      /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE